## MAYER et al. v. J. T. JONES & SONS.

No. 15208—Opinion Filed Sept. 22, 1925.

(Syllabus.)

1. Counties — Creating Excessive Indebtedness — Invalidity — Mere Verbal Agreement for Future Supplies for County Poor not "Incurring Debts."

After the estimate for revenues for the poor fund of Coal county for the year 1922 had been made, the board of county commissioners and J. T. Jones & Sons, merchants, made a verbal agreement by which Jones & Sons were to furnish such supplies as might be required during said year. No supplies were required for said purpose, none purchased, none furnished, nor any claims therefor filed against the county until after the revenue provided for the poor fund had been exhausted, having been paid out to other parties before Jones & Sons furnished any supplies or filed any claims therefor.

This is held to be a case of incurring debts against a fund in excess of the revenue provided for such fund for such year.

2. Same—Constitutional Limitation on Indebtedness.

Section 26, art. 10, of the Constitution places two distinct and emphatic limitations upon the debt incurring power of the state and municipalities thereof, to wit:

(1) That neither the state nor any municipal subdivision shall be allowed to become indebted in any manner, for any purpose, in any year beyond the revenue provided for that year, without the assent of three-fifths of the voters.

(2) Nor in cases requiring such assent shall any indebtedness be allowed to be incurred in excess of five per cent. of the value of the property therein as determined by the last assessment previous to the incurring of such indebtedness.

Under these provisions, the power of officers to contract debts ceases when the limit is reached and it is expressly reserved to the people the right to say whether or not such limit shall be exceeded.

3. Same—Statutory Limitation on Appropriations.

Recognizing said constitutional limitations, section 9701, Comp. St. 1921, provides that all appropriations authorizing the creation of an indebtedness shall come within the limitations of section 26, art. 10, of the Constitution.

4. Same—Civil and Criminal Liability of Officers Incurring Excessive Indebtedness.

Further vitalizing and giving effect to the Constitution, sections 8636, 8637, and 8638, Comp. St. 1921, not only place a positive limitation upon the power of officers to contract debts, in excess of the revenues provided for a given purpose for a given year, but expressly declare that such debts, if incurred, shall not be a charge against the municipality, and expressly declare that such debts may be collected by civil action against the officers incurring same, and section 8639 provides:

"Any officer contracting, incurring, acknowledging, authorizing, allowing or approving any indebtedness, or any officer issuing, drawing, or attesting any warrants or certificate of indebtedness in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue, or who violates any other provision of this act, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than one hundred or more than one thousand dollars, and shall forfeit and be removed from his office."

5. Same—Duty of Officers to Take care of Necessary Expenses.

The purpose of the law, in providing for officers and vesting them with any power to raise revenue and to incur debts against same, is to secure the necessary expenses of

government; hence, under our plan of government and policy of law, it is not intended that the revenues for the necessary expenses of government shall be dissipated and squandered for nonessential conveniences before the expenses imposed by law are met or provided for.

Error from County Court, Coal County; P. I. Gassoway, Judge.

Actions by J. T. Jones & Sons against the Board of Commissioners of Coal County; Mike Mayer and others intervening as taxpayers. Judgment for plaintiffs, and interveners bring error. Reversed.

Jas. R. Wood, for plaintiffs in error.

G. T Ralls, for defendants in error.

HARRISON, J. This proceeding is to reverse two separate judgments of the county court of Coal county, in favor of J. T. Jones & Sons, against the board of county commissioners of such county, for supplies furnished for the benefit of the poor of such county. The facts necessary to a determination of the merits of the case are:

That in July, 1922, and after the estimate for revenue for the various funds had been made for said year, the board of county commissioners and J. T. Jones & Sons entered into a verbal agreement by which Jones & Sons were to furnish such supplies as might be required for the poor of said county during said fiscal year, and pursuant to which Jones & Sons furnished at different times and in different quantities, such supplies as were required by the board of commissioners. When claims therefor were filed with the board of county commissioners, payment was refused for the reason that the revenue, $1,500, provided for such fund for said year, had been exhausted, or paid out to other parties upon other claims, that is, all but $14.90, before Jones & Sons presented their claims, and upon refusal of payment Jones & Sons filed two separate suits against said board, as fiscal agents of said county, one for $871.19, and one for $692.75, the two actions being numbered 621 and 622, respectively.

The board of county commissioners answered by general denial in each action, and upon trial, judgment was rendered against said board in each cause. Thereafter, plaintiffs in error herein intervened as taxpayers of said county and filed motions to vacate each of said judgments upon the ground that the funds provided by the excise board for the poor for said year had been exhausted before the alleged indebtedness to Jones & Sons had been incurred, and that such indebtedness, having been incurred in excess of the revenue provided for such fund for said year, without having been submitted to a vote of the people for the three-fifths assent prescribed by section 26, art. 10, of the Constitution, was void and constituted no valid claims against the county.

The motions to vacate were sustained, and plaintiffs in error permitted to intervene as taxpayers. Thereupon the cases were consolidated, tried, and judgment rendered in favor of Jones & Sons for the amounts claimed, and plaintiffs in error appeal to this court for reversal.

Whether such judgment should be reversed depends upon whether the board of county commissioners could legally contract indebtedness against said fund in excess of the revenue provided for such fund for said year, without the assent reserved to the voters by section 26, art. 10, of the Constitution.

It is contended that the contract between the board of county commissioners and Jones & Sons was made in July, 1922, while sufficient funds were on hand, and before any other debts had been contracted against such fund, and was therefore legal and binding, citing Buxton & Skinner Co. v. Board of County Commissioners of Craig Co., 53 Okla. 65, 155 Pac. 215.

While it is taken as true that a verbal agreement was entered into between the parties in July that Jones & Sons would furnish such supplies as might be needed and required for the poor, yet in reality no specific contract was made for any definite amount at any fixed price, and it is a record fact that the revenue provided for such fund for said year had all, except a balance of $14.90, been paid out before Jones & Sons furnished any supplies or filed any claims therefor.

Thus the facts present a clear case of incurring debts against such fund in excess of the revenue provided for such funds for that year, for notwithstanding the agreement that Jones & Sons would furnish such supplies as were required and at such times as needed, yet such agreement created no obligation to pay for any supplies until they were purchased and furnished, and therefore created no debt against such fund until supplies were actually furnished. If no supplies had been required and none furnished, Jones & Sons would have had no claim against the board of commissioners, and the board of commissioners would have incurred no obligation to pay for any supplies. Hence the agreement made between the par-

ties in July had no further effect than that Jones & Sons would furnish such supplies as were required, but would not furnish any supplies if none were required, and, as none were required and none furnished, and therefore no debt created until after the revenue in the poor fund had been exhausted, it becomes a clear case of incurring indebtedness in excess of the revenue provided for a given purpose during a given year, and the decisive question is whether the board of county commissioners could legally incur such debt.

This question is answered in the negative by both the Constitution and statutes. Section 26, art. 10, of the Constitution provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness."

This section, as was observed in Eaton, County Treas., v. St. Louis & S. F. Ry. Co., No. 15203, decided Sept. 15, 1925, (petition for rehearing pending), places two distinct and emphatic limitations upon the debt incurring powers of the state and municipalities thereof, to wit: ·(1) That neither the state nor any municipal subdivision shall be allowed to become indebted in any manner, for any purpose, in any year beyond the revenue provided for that year, without the assent of three-fifths of the voters. (2) Nor in cases requiring such assent shall any indebtedness be allowed to be incurred in excess of five per cent. of the value of the property therein, as determined by the last assessment previous to the incurring of such indebtedness. The first limitation in said section, to wit:

"No county, city town, township, school district, or other political corporation or subdivision of the state shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose"

—is applicable and decisive of the question presented here. This limitation is not only free of ambiguity, but the language is clear, positive, and mandatory. There could have been but one purpose in view by the framers of the Constitution in choosing the above language, and by the people in the adoption of such provision as a part of their organic law, viz., to prohibit the state and all its municipal subdivisions from incurring any indebtedness for any purpose, in any year, beyond the revenues provided for that year, without the assent of three-fifths of the voters of the municipality seeking to incur such indebtedness, and such purpose could not have been expressed in clearer and more emphatic words.

It constitutes a positive, mandatory limitation upon the power of fiscal agents of the state and its municipal subdivisions to incur any debt, in any year, in excess of the revenue provided for such year, unless the incurring of such debt has the assent of three-fifths of the voters of the municipality incurring same, at an election held for the purpose of ascertaining whether such assent be given or withheld. The power of the officers to contract debts ceases when this limit is reached, and it is reserved to the voters to say whether such limit shall be exceeded.

The framers of the Constitution, foreseeing the necessity for such a limitation, wisely proposed and submitted it to the electorate, and the people, with like wisdom, adopted it as part of their organic law, and thereby they not only reserved to themselves a voice in the fiscal affairs of government beyond the prescribed limit, but bound themselves as well as their officials to be governed by such limitations; realizing that they could not have time to spare from their own private affairs to look after and exercise a voice in every detail of government, they vested power in certain officers to provide for revenue within a prescribed limit and to incur debts up to a prescribed limit, but they emphatically say: "When this limit is reached, no further debt shall be allowed to be incurred, in any manner, or for any purpose, without the people's assent."

This limitation is not only plain and positive, but wise and wholesome. It not only secures the people against reckless extravagance, but gives stability and soundness to municipal credit.

It is equivalent to the people's saying to their officers and to the commercial world: "We hereby authorize our chosen agents to levy revenues up to the prescribed limit

and to incur indebtedness up to the prescribed limit and pledge the credit of the state to the payment of all debts up to such limit, but beyond such limit no debts shall be allowed to be incurred in any manner, or for any purpose, without our assent." In other words, if any debts are contemplated beyond this limit, the people have reserved the right to say whether or not it shall be incurred; it might be for something which the people might vote to do without, or it might be for something which they might consider necessary, and give their assent thereto, but in either event they reserve the right to say by their vote whether or not any debt for any purpose shall be incurred in excess of the limit prescribed.

The statutes are equally clear and positive as to these limitations. After providing the manner of making the estimate of expenses for an ensuing year and of raising revenues and contracting debts against such revenues, section 9699, Comp. St. 1921, provides:

"The several items of the estimate as made and approved by the excise board for each fiscal year shall constitute and are hereby declared to be an appropriation of funds for the several and specific purposes named in such estimate, and the appropriation thus made shall not be used for any other fiscal year or purpose whatsoever. Each clerk or other issuing officer shall open and keep an account with the amount of each item of appropriation showing the purpose for which the same is appropriated and the date, number, and amount of each warrant drawn thereon. No warrant or certificate of indebtedness in any form, shall be issued, approved, signed, attested, or registered on or against any appropriation for a purpose other than for which said appropriation was made, or in excess of the amount thereof."

Section 9701, Comp. St. 1921, also provides:

"* * * That all such appropriations authorizing the creation of an indebtedness, shall come within the limitations of section 26, art. 10, of the Constitution. No supplemental or additional appropriation shall be made for any county, township, city, town, or school district in excess of the income and revenue provided for or accumulated for the year."

Section 9702, Id., defines the term "appropriation" as follows:

"The term 'appropriation' as used herein is hereby declared to be synonymous with 'estimate made and approved' as defined in * * * section 8633 and the provisions, requirements, limitations and penalty (prescribed in sections 8631-8639, Id.) are here-

by specifically declared to extend to and embrace 'appropriations' as herein defined."

Section 8636, Id., provides:

"It shall be unlawful for any officer to issue, approve, sign, attest or register any warrant or certificate of indebtedness in any form in excess of the estimate of expenses made and approved for the current fiscal year or authorized for such a purpose by a bond issue, and any such warrant or certificate of indebtedness issued, approved, attested or registered in excess of the estimate made and approved or authorized by a bond issue, shall not be a charge against the municipality upon which it is issued, but may be collected by civil action from any officer issuing, drawing, approving, signing, attesting, registering or paying the same, or from either or all of them, or from their bondsmen."

Section 8637, Id., provides:

"Any treasurer who shall register or pay a warrant or certificate of indebtedness, issued in excess of the estimate made and approved by the excise board for the current fiscal year, or in excess of a bond issue for such purpose, shall be guilty of a misdemeanor."

Section 8638, Id., provides:

"It shall be unlawful for the board of county commissioners, the city council or the commissioners of any city, the trustees of any town, board of education, township board, school district boards or any member or members of the aforesaid commissioners, or of any of the above named boards, to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue. And such indebtedness, contracts incurred, acknowledged, approved, allowed or authorized in excess of the estimate made and approved for such purposes for such current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue, shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed or authorized or attested the evidence of said indebtedness, but may be collected by civil action from any official contracting, incurring, acknowledging, approving or authorizing or attesting such indebtedness, or from his bondsmen."

Section 8639, Id., provides:

"Any officer contracting, incurring, acknowledging, authorizing, allowing or approving any indebtedness, or any officer issuing, drawing, or attesting any warrant or certificate of indebtedness in excess of the esti-

mate made and approved by the excise board for such purpose for such current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue, or who violates any other provision of this act, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than one hundred or more than one thouand dollars, and shall forfeit and be removed from his office."

Article 9, ch. 35, Id., defines the powers and duties of the board of county commissioners as fiscal agents of the county and authorizes them to contract debts for the current expenses of county government and to levy revenues for the payment of such expenses; provides that revenues raised for any particular purpose shall be expended for such purpose and for such purpose only, and in order to avoid exceeding the revenues provided for a given purpose for a given year, provides for a complete system for keeping a correct record of all claims presented against the county; provides that the county clerk shall keep a calendar of all claims filed against the county, that all claims must be presented to the county clerk and duly verified, and by him numbered in said calendar, and that at the regular meeting of the board of commissioners the county clerk shall present such calendar of claims and shall keep a record of all claims allowed and claims disallowed.

Section 5827, Id., provides the form of such calendar and section 5831, Id., provides that the county treasurer shall keep a duplicate of such calendar in order that the revenues provided for a particular fund shall not be exceeded and that the clerk's calendar and county treasurer's calendar may be a check upon each other; provides, also, for submitting questions to a vote of the people when revenues in excess of the amount already provided for a given year are deemed to be needed.

The power to contract debts in excess of the limitations prescribed in chapter 16, Sess. Laws 1895, was passed upon by the Supreme Court of the territory of Oklahoma in Huddleston v. Board of Com'rs of Noble Co., 8 Okla. 614, 58 Pac. 749, wherein the court held:

"Under the provisions of section 1, ch. 16, Sess. Laws 1895, the board of county commissioners have no power to allow a claim, and issue a warrant therefor, after * * * the tax levy for county expenses during the current year has been exhausted; and hence, where the plaintiff's claim for juror's services was filed and presented to the board of county commissioners for allowance after * * * the tax levied for such

purposes had been exhausted, a mandamus will not lie to compel the board of county commissioners to allow plaintiff's claim, and issue a warrant therefor."

In Kerr, Co. Clerk, v. State ex rel. Wimbish, 33 Okla. 110, 124 Pac. 284, the same question was again before this court and together with the limitations prescribed in section 26, art. 10, of the Constitution was construed as to the power to contract indebtedness beyond the limitation therein fixed. The court held:

"The limitation imposed upon county indebtedness by section 1 of chapter 16, Sess. Laws 1895, Ter. of Oklahoma (sec. 1683, Comp. Laws 1909), includes debts and liabilities incurred and fixed by operation of law as well as those arising from express contracts."

A similar statute, or rather a statute identical in its limitation upon the power of cities to contract debts in excess of the revenues, was before this court and passed upon in Haskins & Sells v. Okla. City, 36 Okla. 57, 126 Pac. 204, in which it was held:

"Under section 478, Wilson's Rev. & Ann. St. 1903, it is unlawful for the mayor and city council of any city to enter into any contract, or incur any indebtedness against the city, or any of the funds of the city, in excess of * * * the tax levied for such funds for the year in which the indebtedness is incurred; and any contract entered into, or any indebtedness incurred, in violation of said section is void as to the city, and does not create a debt against the city."

In Re Town of Afton, 43 Okla. 720, 144 Pac. 184, the question of the power of officials to contract debts in excess of the limitation prescribed by section 26, art. 10, of the Constitution (the limitation here under consideration) was squarely and definitely passed upon, the court holding:

"The officials of the town of Afton issued warrants to take up an indebtedness in an amount approximating $8,000, created in excess of the revenue and income provided for the payment of current expenses of said town for the years in which said warrants were issued. Held, that said indebtedness was created in violation of section 26, art. 10, of the Constitution, and the same is a nullity and constitutes no liability against such municipality."

"Said warrants, having been issued in violation of section 26, art. 10, Const. are a nullity, and the court is powerless to validate same."

"One who deals with a municipality does so with notice of the limitations on it or its agent's powers. All are presumed to know the law, and those who contract with

a municipality or furnish it supplies do so with such knowledge; and, if they go beyond the limitations imposed, they do so at their peril."

"It is plain that the intention of section 26, art. 10, of the Constitution, is to require municipalities to carry on their corporate operations upon a cash basis. The revenues and income provided for each year must pay the expenditures of such year; and any debt or contract sought to be created in excess of such revenues and income provided creates no liability against such municipality, unless it be authorized by a vote of three-fifths of the legal voters before or at the time of creating same, and comes within the limitations therein expressed."

The limitations prescribed by both the statutes and the Constitution were again passed upon, by the United States Circuit Court of Appeals of the 8th District, December 3, 1917, in Vincennes Bridge Co. v. Board of Co. Com'rs Atoka County. Okla., 248 Fed. 93, Sandborn, Circuit Judge, rendering the opinion in the case. The court quoted from and followed this court in the Kerr Case, the Haskins & Sells Case, and In re Town of Afton, supra, and upon the authority of such cases based its opinion, holding:

"In an action to enforce such a contract, illegal because its execution is beyond the powers of the county commissioners, it is immaterial what use the county made of the funds."

We cite this case from the Circuit Court of Appeals, together with the above decisions of this court, for the sole purpose of showing that plain, positive limitations placed upon the power to contract debts cannot be exceeded.

The rule for determining the purpose of a constitutional or statutory provision, and for determining the meaning of the language used in such provision, was announced by the Supreme Court of the United States in Lake Co. v. Rollins, 32 L. Ed. 1060. Mr. Justice Lamar in delivering the opinion of the court said:

"To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it.

Newell v. People, 7 N. Y. 97; Hills v. Chicago, 60 Ill. 86; Denn v. Reid, 35 U. S. 10 Pet. 524 (9:159); Leonard v. Wiseman, 31 Md. 204; People v. Potter, 47 N. Y. 375; Cooley, Const. Lim. p. 57; Story, Const. 400; Beardston v. Virginia, 76 Ill. 34. So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. United States v. Fisher, 6 U. S. 2 Cranch, 358, 399 (2: 304, 317); Doggett v. Florida R. Co., 99 U. S. 72 (25; 301). There is even stronger reason for adhering to this rule in the case of a Constitution than in that of a statute, since the latter is passed by a deliberative body of small numbers, a large proportion of whose members are more or less conversant with the niceties of construction and discrimination, and fuller opportunity exists for attention and revision of such a character, while Constitutions, although framed by conventions, are yet created by the votes of the entire body of electors in a state, the most of whom are little disposed, even if they were able, to engage in such refinements. The simplest and most obvious interpretation of a Constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption.

"Such considerations give weight to that line of remark of which People v. Purdy, 2 Hill, 35, affords an example. There, Bronson, J., commenting upon the danger of departing from the import and meaning of the language used to express the intent, and hunting after probable meanings not clearly embraced in that language, says:

" 'In this way the Constitution is made to mean one thing by one man and something else by another, until in the end it is in danger of being rendered a mere dead letter, and that, too, when the language is so plain and explicit that it is impossible to mean more than one thing, unless we lose sight of the instrument itself and roam at large in the fields of speculation.'

"Words are the common signs that mankind make use of to declare their intention to one another; and when the words of a man express his meaning plainly, distinctly, and perfectly, we have no occasion to have recourse to any other means of interpretation."

Black on Interpretations (2nd Ed.) p. 20, says:

"Where the meaning shown on the face or words is definite and intelligible, the courts are not at liberty to look for another meaning, even though it should seem more probable or natural, but they must assume that the Constitution means just what it says: * * * that which the words declare, is the meaning of the instrument, and neither the

courts nor Legislature have a right to add to or take away from that meaning. * * * Deviating from the literal sense of the words employed in the Constitution is a very dangerous proceeding. * * *"

The words used in our Constitution gave the plain, literal significance contemplated in the above rules. Their literal meaning has not only been recognized and adopted by the courts, state and federal, but their literal meaning has been so repeatedly accepted and adopted by the courts as to now have a definite and permanent legal significance.

In Kerr, Co. Clerk, v. State ex rel, Wimbish, supra, this court, after quoting the constitutional limitation here under consideration, said:

"It is difficult to make clearer the force and meaning of the language used by any degree of refinement or discussion."

In Re Town of Afton, supra, this court, discussing the meaning of such constitutional limitation, said:

"It is plain that the intention of section 26, art. 10, of the Constitution is to require municipalities to carry on their corporate operations upon a cash basis."

In Litchfield v. Ballou, 29 L. Ed. 132, the Supreme Court of the United States, in passing upon the meaning of a provision of the Illinois Constitution, containing the following words, "No city, * * * shall be allowed to become indebted in any manner or for any purpose," said:

"It shall not become indebted, shall not incur any pecuniary liability, it shall not do this in any manner, neither by bonds or notes or by express or implied promises, nor shall it be done for any purpose no matter how urgent, how useful, how unanimous the wish."

In Doon Twp. v. Cummins, 35 L. Ed. 1046, the Supreme Court of the United States, in passing upon a provision of the Iowa Constitution, which contained substantially the same language, said:

"The scope and meaning of this provision of the fundamental and paramount law of the state are clear and unmistakable. No municipal corporation shall be allowed to contract debts beyond the constitutional limit. When that limit has been reached, no debt can be contracted in any manner or for any purpose."

And in the course of the court's reasoning it repeated and followed the language it had previously used in Litchfield v. Ballou, supra,

In Lake Co. v. Rollins, supra, in passing upon a provision of the Colorado Constitution, the Supreme Court of the United States said:

"We are unable to adopt the constructive interpolations ingeniously offered by counsel for defendant in error. Why not assume that the framers of the Constitution and the people who voted it into existence meant exactly what they say?"

But while it is true that such limitations as are contained in our Constitution and statutes place an emphatic stop upon the power of officers to incur further debts, constitute the end of power to contract debts, unless the assent of the voters be obtained, yet under our statutes it is not these limitations alone which exempt municipalities from liability for debts in excess of the revenues, nor these limitations alone which render such debts void as against a municipality. The statutes, as will be observed by reading sections 8636 to 8639, supra, expressly declare that a municipality shall not be liable for such debts, expressly declare that such debts shall be void as against a municipality, and expressly provide that the officers incurring, contracting, attesting, paying, or approving such debts, they and their bondsmen shall be civilly liable for same, and that such officers shall be subject to criminal prosecution and automatic removal from office, if found guilty.

Under our plan of government, it is not intended that the revenues, for the necessary expenses of government for a given year, shall be dissipated and squandered for nonessential conveniences before the expenses imposed by law are met or provided for. The manifest and only purpose of the plan of government, in providing for officers and vesting them with any power to raise revenue, and to incur debts against same in the name of their respective municipalities is to secure the operation of government and meet the expenses thereof imposed by law. Hence the law places a limitation upon the power of officers to incur any debts in excess of the revenue, for a given year, in order thereby to secure the payment of expenses imposed by law for salaries, fees, funds, supplies, etc., necessary to the operation of government.

The argument that the supplies herein were for the poor, and that the county was under a moral obligation to support and feed its poor and helpless will not justify the court in disregarding both the mandatory limitations in the Constitution and the express declarations of the statutes.

Had the board of county commissioners done what the law required, when they discovered that the fund had been exhausted and additional revenue would be needed for the care of the poor, and submitted to the people the question whether additional debts should be incurred and additional revenue provided, the good people of Coal county would beyond doubt have readily responded to the need and either given their assent by their vote and thereby discharged the legal obligation, or by private contribution discharged their moral obligation. The case of Buxton & Skinner v. Board of Commissioners, Craig Co., 53 Okla. 65, 155 Pac. 215, cited by defendants in error, is not in point here, as it appears from the opinion that the contract under consideration had been completed, the goods purchased and delivered, and the obligation to pay became fixed before the funds had been exhausted. In the case at bar the obligation to pay had not become fixed until after the funds had been exhausted.

In our opinion, the defendants in error have mistaken their remedy in not proceeding against those who the statutes expressly declare shall be liable, and the county court erred in rendering judgment against the county.

The judgment is reversed.

MASON, LESTER, PHELPS, HUNT, and RILEY, JJ., concur. NICHOLSON, C. J., and BRANSON, J., concur in conclusion only.