### ANADARKO FUNERAL HOME v. SCARTH et al.

No. 23691.    April 30, 1935.

Rehearing Denied May 21, 1935.

Application for Leave to File Second Petition for Rehearing Denied July 2, 1935.

W. H. Cooper, for plaintiffs in error.

Ted Morgan, Co. Atty., for defendants in error.

PHELPS, J.    The plaintiffs in error, who were plaintiffs below, were undertakers in Anadarko, Okla.    On August 4, 1930, they entered into a written contract with the board of county commissioners of Caddo county wherein they agreed to embalm, clothe, furnish graves, conduct funerals, and completely furnish and supervise the burials of such dead bodies as would become a charge upon the county during the fiscal year.    For such service plaintiffs were to receive a certain reasonable sum, stated in the contract, for each person buried.

On the date upon which the contract was made the amount already within the approved estimate for such purposes, and, we may assume already levied as tax and collected, was $5,952.79, designated as the fund for "caring for the poor, burial of paupers, etc."    Plaintiffs buried the first dead body on November 6, 1930, some three months af-

ter the date of the contract, at which time the fund had been exhausted. Between that date and June 25, 1931, plaintiffs buried 35 dead bodies, amounting to $1,545, and thereafter filed their claim for that amount with the county commissioners, who disallowed it because all the appropriation for caring for the poor and burial of paupers had been exhausted, and was exhausted on the occasion of each of the burials. However, "each burial was authorized by the commissioners," according to the agreed statement of facts.

Plaintiffs filed suit against the county commissioners for recovery of said $1,545. Defendants filed a general denial. The issues were submitted on an agreed statement of facts to the trial court, resulting in a judgment for the defendants on the ground that the contract was in violation of section 26, art. 10, of the Constitution of the state of Oklahoma, which prohibits a county from creating debts in excess of the revenue and income provided for the year in which the debt in question is created. The pertinent part of such section is:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof. * * *"

We have repeatedly held that if the indebtedness created by the municipality's contract is within the income and revenue provided and approved, and if the funds on hand and not already validly obligated for the payment of other indebtedness are sufficient to meet the indebtedness created by the contract on the date it was executed, then the contract binds the county or other municipality, without regard to subsequent misapplication of the fund by the county commissioners. Gentis v. Hunt, 121 Okla. 71, 247 P. 358; Buxton & Skinner Stationery Co. v. Board of Com'rs of Craig County, 53 Okla. 65, 155 P. 215, and cases cited. But all such cases fall in one of two classes: Either (1) the contract prescribes a definite and certain sum to become payable, or (2) although the contract does not prescribe a definite and certain sum to become payable, the plaintiff, by performing under the contract before the fund is exhausted, thereby creates certainty of the amount to become due and payable.

This case is not in either class. The contract did not specify a definite amount

to become due, nor was there performance by plaintiffs before the fund was exhausted, thus fixing and determining the portion of the fund which they could claim. It is true that an obligation was created, that obligation being to pay to the plaintiffs the sum specified for each burial. But that obligation could not be called a debt for a sum certain until burials should take place, for there was no obligation on the county to pay until the plaintiffs performed. It may be said that the same thing is true of all executory contracts, but in computing the indebtedness of a county or other municipality for the purpose of complying with the above constitutional requirements, it is necessary that there be definite and certain sums and figures with which to compute. At the time when this contract was made, what figure could be set down for the burial of the poor, so that subsequent expenditures from the same fund could be made on a definite basis? Looking from that date forward, possibly the plaintiffs may bury five bodies, or 50— there was no definite basis upon which to proceed.

This point was considered in Mayer v. J. T. Jones & Sons, 113 Okla. 119, 239 P. 904, in which case the plaintiffs made an agreement with the county commissioners whereunder plaintiffs "were to furnish such supplies as might be required for the poor of said county" during the fiscal year. Notice that the quantity of such supplies, and the price therefor, were uncertain. When the contract was made, sufficient funds were on hand, but before plaintiffs furnished any supplies the fund had been exhausted. This court held that no debt was created until the supplies were furnished, and that therefore when the said debt was incurred, it was in excess of the revenue provideed for such fund for that year. We quote the following language from that case:

"While it is taken as true that a verbal agreement was entered into between the parties in July that Jones & Sons would furnish such supplies as might be needed and required for the poor, yet in reality no specific contract was made for any definite amount at any fixed price, and it is a record fact that the revenue provided for such fund for said year had all, except a balance of $14.90, been paid out before Jones & Sons furnished any supplies or filed any claims therefor.

"Thus the facts present a clear case of incurring debts against such fund in excess of the revenue provided for such

funds for that year, for notwithstanding the agreement that Jones & Sons would furnish such supplies as were required and at such times as needed, yet such agreement created no obligation to pay for any supplies until they were purchased and furnished, and therefore created no debt against such fund until supplies were actually furnished. If no supplies had been required and none furnished, Jones & Sons would have had no claim against the board of commissioners, and the board of commissioners would have incurred no obligation to pay for any supplies. Hence the agreement made between the parties in July had no further effect than that Jones & Sons would furnish such supplies as were required, but would not furnish any supplies if none were required, and, as none were required and none furnished, and therefore no debt created until after the revenue in the poor fund had been exhausted. it becomes a clear case of incurring indebtedness in excess of the revenue provided for a given purpose during a given year, and the decisive question is whether the board of county commissioners could legally incur such debt.

"This question is answered in the negative by both the Constitution and statutes."

We adhere to the ruling in the foregoing case of Mayer v. Jones & Sons, which is controlling here, but clarify the distinction between that ruling and former decisions of ours, particularly Buxton & Skinner v. Board of Commissioners, Craig County, 53 Okla. 65, 155 P. 215. In the Buxton Case plaintiff contracted with the commissioners to furnish county officers with certain office supplies covering a period of time. When the contract was made the approved estimate for that purpose had provided for the revenue, which was on hand. Thus far all three cases are alike in that respect, the Buxton Case, the Mayer Case and the present case. But the plaintiff in the Buxton Case furnished the supplies before the fund became exhausted, while in the Mayer Case and the present case the plaintiffs did not furnish the supplies or perform the services until after the fund was exhausted. The opinion in the Mayer Case rather insufficiently distinguishes itself from the Buxton Case by stating such distinction to be that in the Buxton Case the "obligation to pay became fixed before the funds had been exhausted." The real distinction between the two cases is that in the Buxton Case the obligation to pay a **definite and certain amount** became fixed before the funds had been exhausted. It is the certainty of the

amount, so that it may be subtracted from the fund on hand and thus leave a definite balance for the meeting of other obligations, which is important, rather than the fact that plaintiff performed before the fund was exhausted. If this were not the real distinction, then Mayer v. Jones & Sons would be contra to Gentis v. Hunt, 121 Okla. 71, 247 P. 358, in which teachers were permitted to recover for services performed after the fund was exhausted, for in that case it could not be said that "the obligation to pay became fixed before the funds had beeen exhausted." In all of these cases there was an existing appropriation for the purpose of the contract at the time the contract was made. In the Buxton Case (office supplies) only performance by the plaintiff could determine the exact amount due, and that performance was had, and the amount fixed, before the appropriation was exhausted; in the Gentis Case (teachers' services) it did not need performance by the plaintiffs to determine the amount to become due, and hence the fact that the fund became exhausted before performance was immaterial, for a definite, certain amount could have been "laid by" or set aside, it was theoretically "taken"; but in the Mayer Case (supplies for the poor) and in the present case (burial of paupers) the amounts to become due were uncertain, could not be determined, until performance by the plaintiffs, and since there was no performance until after exhaustion of the fund, there was no definite amount that could have been laid by, as "taken," either theoretically or practically. No share or interest in said unexpended fund could vest in plaintiffs without the amount thereof being capable of definite ascertainment.

Obviously in such cases, from the viewpoint of compliance with the Constitution (assuming that the expenditure contemplated in the contract is within the appropriation), the question is whether the contract obligation becomes a "debt" before the funds are exhausted. Where the contract names no specific sum, nor even any maximum sum, but leaves the amount thereof to be determined on a piece-work basis, as in the present case, it is impossible to determine in the first place whether it is within the amount provided by the appropriation; and, in the second place, it cannot become a debt until the amount thereof can be made certain. The

amount cannot be made certain until performance, and if performance is postponed until after exhaustion of the fund, the debt thereby and then created is a debt in excess of the appropriation,—not so much because the performance took place after the fund was exhausted, but (and this is the real reason) because it was impossible, before the fund was exhausted, to earmark any specific amount in said fund for payment for performance under the contract, regardless of the time of that performance. No contract can be said to be within the appropriation when the amount to be paid under said contract is absolutely uncertain, and does not become certain by performance until after the appropriation is gone.

Plaintiffs next contend that this case comes within the rule announced in Smartt, Sheriff, v. Board of County Com'rs of Craig County, 67 Okla. 141, 169 P. 1101, wherein expenses for the feeding of prisoners in the performance of the plaintiff sheriff's constitutional duty were held to be outside of the limitations imposed by section 26, article 10, of the Constitution. In a recent opinion, Board of Com'rs of Okmulgee County v. Alexander, decided March 12, 1935, 171 Okla. 288, 42 P. (2d) 884, we held that indebtedness created by the county commissioners as overseers of the poor is not a compulsory indebtedness, but a voluntary indebtedness, and that hence same is within the limitations imposed by section 26, article 10, of the Constitution, and not within the exceptions announced in the Smartt Case. We adhere to that ruling.

He who deals with a municipality does so with knowledge of its and its agents' powers, and if in contracting with a municipality one goes beyond the limitations imposed by the Constitution, he does so at his own peril. City of Enid v. Warner-Quinlan Asphalt Co., 62 Okla. 139, 161 P. 1092; In re Town of Afton, 43 Okla. 720, 144 P. 184; Mayer v. J. T. Jones & Sons, supra. This is an unfortunate result for the plaintiffs, but their inconvenience must yield to the larger and more important necessity of enforcing the safeguards enacted by the people into the Constitution for the proper handling of their own public funds.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.