## BOARD OF COM'RS OF TULSA COUNTY v. MORNINGSIDE HOSPITAL AND TRAINING SCHOOL FOR NURSES.

No. 26356. July 2, 1935.

Rehearing Denied Oct. 29, 1935.

Second Petition for Rehearing Denied Dec. 10, 1935.

Joe T. Dewberry, Asst. Co. Atty., for plaintiff in error.

Saul A. Yager, for defendant in error.

GIBSON. J. The defendant in error here was plaintiff, and the plaintiff in error was defendant in the trial court. They will be referred to herein as they appeared in the court below.

At the beginning of the fiscal year 1933-1934 the defendant requested and the excise board of Tulsa county made and approved an appropriation for the care, including the hospitalization, of the poor and indigent persons residing in Tulsa county. During the fiscal year in question the appropriation was exhausted. and the defendant thereupon requested a supplemental appropriation for the county poor or charity fund, which request was denied because of lack of funds available for that purpose. The necessity of furnishing hospitalization to poor persons continued, however, and the plaintiff, with the consent and at the direction of defendant, furnished that service to a large number of poor persons residing in Tulsa county and made a charge in excess of $23,000 against that county therefor. A claim against Tulsa county therefor was made and was denied .for the reason that the appropriation for the charity fund had been exhausted. The plaintiff thereupon instituted suit and recovered a judgment against the county for the amount of its claim, with interest. From that judgment this appeal is taken.

The question here presented is whether or not the administrative officers of a county may impose upon the county a liability for indebtedness for charitable purposes beyond the limits prescribed by the Constitution and the state statutes. We have recently answered the question in the negative. Board of County Commissioners of Okmulgee County v. Alexander, 171 Okla. 288, 42 P. (2d) 884, and Anadarko Funeral Home v. Scarth et al., 173 Okla. 103, 46 P. (2d) 539.

In Mayer et al. v. J. T. Jones & Sons et al., 113 Okla. 119, 239 P. 904, it was sought to impose a liability upon a county for supplies furnished to the poor after the appropriation for the poor fund had been exhausted. Therein we held that section 26, article 10, of the Constitution and the statutes vitalizing and giving effect to it "* * * not only place a positive limitation upon the power of officers to contract debts, in excess of the revenues provided for a given purpose for a given year, but expressly declare that such debts, if incurred, shall not be a charge against the municipality, and expressly declare that such debts may be collected by civil action against the officers incurring same. * * *"

In numerous decisions involving questions similar to the one under consideration we have held that obligations in excess of appropriations are void as to the county and cannot be enforced against it. Graves v. Board of Co. Commissioners of Cimarron County, 170 Okla. 282, 39 P. (2d) 532; Protest of Carter Oil Co., 148 Okla. 1, 296 P. 485; Wood v. Phillips, 95 Okla. 255, 219 P. 646; Myers v. Independent School Dist., 104 Okla. 51, 230 P. 498; Board of Commissioners v. Western Bank & Office Supply Co., 122 Okla. 244, 254 P. 741; Lacy v. Board of Education, 98 Okla. 237, 224 P. 712; Threadgill v. Peterson, 95 Okla. 187, 219 P. 389; Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 P. 720.

Section 3 of article 17 of the Constitution provides:

"The several counties of the state shall provide, as may be prescribed by law, for those inhabitants who, by reason of age, infirmity, or misfortune, may have claims upon the sympathy and aid of the county."

Plaintiff contends that this section of the Constitution imposes a mandatory duty upon the county to provide for the poor and indigent thereof, and that its claim for hospitalization for the poor comes within the doctrine announced by this court in the case of Smartt, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141,

169 P. 1101. With this we cannot agree. The statutes enacted to carry into effect section 3, article 17, supra, are codified in chapter 35, article 10, of O. S. 1931, wherein we find that provision has been made for the acquisition and maintenance of county homes, poor farms and asylums, and the procedure for securing entrance into these institutions is prescribed. We also find that by section 7542, O. S. 1931,

"The county commissioners of the several counties of the state of Oklahoma shall be overseers of the poor for their respective counties, and shall perform all the duties with reference to the poor of their said counties that may be prescribed by law"

—and that section 7543, O. S. 1931, provides:

"The overseers of the poor in each county shall have the oversight and care of all the poor persons in their county so long as they remain a county charge, and shall see that they are properly relieved and taken care of in the manner provided by law."

The quoted statutes were considered in Board of County Commissioners of Okmulgee County v. Alexander, supra, and therein we said (quoting from the fourth paragraph of the syllabus):

"The county commissioners of the several counties of the state of Oklahoma shall be overseers of the poor for their respective counties, and shall perform all the duties with reference to the poor of their said counties that may be prescribed by law (sec. 7542, O. S. 1931). * * * and whatever indebtedness may be created pursuant to those statutes is not a compulsory indebtedness, but strictly a voluntary indebtedness, any part of which that is contracted for, or services performed for, in excess of the amount of the estimate made therefor and approved by the excise board for the current fiscal year, or in excess of the amount authorized for such purpose by vote of the people, does not constitute a legal claim against the county, unless it be specifically shown that the indebtedness was in furtherance of a constitutional governmental function coming within the doctrine announced by this court in the case of Smartt, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 P. 1101."

Plaintiff says that at the time the hospitalization was furnished to the poor persons of Tulsa county an emergency existed, and that had such services not been rendered by it, various and dire consequences might have resulted. Even if that be true, the county commissioners of Tulsa county were not authorized to violate the provisions of the Constitution and the state statutes.

Norman v. Baltimore & Ohio R. Co., 79 L. Ed. (U. S.) 885.

Section 26, article 10, of the Constitution provides in no uncertain terms that a county shall not be "allowed to become indebted in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof. * * *" There was no election held for the purpose of allowing the indebtedness sought here to be imposed upon the county. We have no right to add to or take from the plain constitutional provisions.

The judgment of the trial court is reversed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, WELCH, PHELPS, and CORN, JJ., concur. BUSBY, J., absent.

### On Rehearing.

McNEILL, C. J. (dissenting). It seems to me that the rule announced in the instant case is too broad.

If the Smartt Case, supra, is to be followed, there can be no weighty reason to deny liability for an indebtedness incurred by the county commissioners in emergency cases to the unfortunate poor, residents of the county, in the way of medical and surgical aid, or hospitalization, including those handled under quarantine regulations, when such indebtedness has been incurred under authorization of the officials designated by statute for the sole purpose of protecting the public from infectious and contagious diseases, and saving the lives of those who are sick and in distress, irrespective of constitutional debt limitations and lack of appropriations for the poor fund.

Government existed before Constitutions were written. Our federal and state Constitutions were founded upon the inalienable principle of protecting the lives, liberty, and property of our people. The constitutional debt limitations were intended for regulation purposes so as to place a check on reckless expenditures and from loading the future generations with inconsiderate extravagance.

This court has held in the case of Garfield County v. Enid Springs Sanitarium, 116 Okla. 249, 244 P. 426, that, in case of emergency attendance upon a pauper, a physician may hold the county liable for reasonable compensation within the limits of the fund provided by law for such purposes. It is the duty of the county to provide funds to meet necessary emergencies in caring for the

poor of its county. We have held, under the Smartt Case, that recovery may be had for the indebtedness incurred by feeding the prisoners even though no appropriation had been made and the constitutional debt limitations had been exceeded.

It is my opinion that we should overrule the Smartt Case if the municipalities cannot pay good faith indebtedness incurred in reasonably protecting the poor, under emergency cases. limited to relieving distress in sickness and saving human life, all of which might result to the detriment of the public, and in such a case those who render reasonable service with the expectation of being paid should not, in the common interests of mankind and the dictates of justice, be barred by reason of failure of municipal appropriations and constitutional debt limitations. I cannot feel that the feeding of prisoners by the sheriff should be the sole exception to constitutional debt limitations. In the case of Miller v. Banner County, 256 N. W. 639, the Supreme Court of Nebraska said:

"In the present instance we have a case of an emergency, where an immediate operation was necessary for the saving of a human life. No county physician appears in the picture, and the county board has wholly failed to provide the essentials of the necessary care that common humanity requires. Obviously, under these circumstances, the rule our statutory provisions imply and the history of poor relief in all jurisdictions sustains governs, viz., that in cases of emergency a physician should, if reasonably possible, attempt to communicate with the proper corporate authorities charged with the care of the poor, but if an arbitrary refusal is given, or if such corporate authorities be noncommittal, the necessary services may be rendered notwithstanding, and the law imposes an obligation upon the county to pay the reasonable value of such services. Newcomer v. Jefferson Township, 181 Ind. 1, 103 N. E. 843, Ann. Cas. 1916D, 181; County of Christian v. Rockwell, 25 Ill. App. 20; Dykes v. Stafford County, 86 Kan. 697, 121 P. 1112: Robbins v. Town of Homer, 95 Minn. 201, 103 N. W. 1023; Board of Supervisors v. Gilbert, 70 Miss. 791, 12 So. 593; Trustees of Cincinnati Township v. Ogden, 5 Ohio, 23; Eckman v. Township of Brady, 81 Mich. 70, 45 N. W. 502; 48 C. J. 537, 539."