## PUBLIC SERVICE COMPANY OF OKLA-HOMA v. CITY OF TULSA.

### No. 24024.   Oct. 1, 1935.

V. E. McInnis and Hunter L. Johnson, for plaintiff in error.

R. P. Colley and H. O. Bland, City Attys. (successively), and Bert E. Johnson, O. H. Searcy, E. M. Gallaher, Asst. City Atty., C. L. Hamilton, and Edna Claire King, for defendant in error.

PHELPS, J.   The only question decided herein is whether a municipality is contractually liable for its voluntary indebtedness covering electric current used in lighting its streets, said indebtedne.s being in excess of the income and revenue provided for that year.   The question necessitates consideration of whether the debt limitation imposed by article 10, section 26, of our State Constitution concerns only that indebtedness for governmental functions, as distinguished from and to the exclusion of indebtedness incurred for proprietary functions.

Public Service Company of Oklahoma made a contract with the city of Tulsa to electrically light the latter's public streets for a term of years.   The city had no electric power plant.   The company furnished the poles, wires, lights. current, and maintenance. The sum to be paid depended on the class and number of lights furnished, the hours of burning, and additions and alterations to the lighting system to be made by the company at the city's option and direction, which option was from time to time exercised by the city.   Bills were rendered and paid monthly, in accordance with the contract, out of funds appropriated for that purpose, during the fiscal year 1929-1930.   But the appropriation for that purpose for the fiscal year 1930-1931 became exhausted in the month of March, 1931, and for that month the city paid only that portion of the bill represented by the sum remaining in the fund.   The company was told that the fund had become exhausted. but was prevailed upon by the city officials to continue the service, upon the promise that the officials would pay the bills out of the water department fund, if other means failed.   The water department was operated by the city as a public utility, its fund being carried separately from the general fund.

The city did not pay the bills out of the water department fund or any other fund. The company brought this suit to recover for the unpaid portion of the March bill, and for the April, May, and June bills of 1931, being the remainder of the fiscal year, totaling $27,165.43. Upon the foregoing facts the lower court rendered judgment for the defendant city, upon its conclusion that:

"The facts in this case are controlled by section 26, article 10, of the Constitution of Oklahoma and by the statutes of the state of Oklahoma in reference to the approval by the excise board of estimates and appropriations made by municipalities; and that * * * the city of Tulsa was without legal authority to incur the indebtedness for lighting its streets in excess of the appropriation approved by the excise board of the county of Tulsa and state of Oklahoma; and that the excise board of said county having fixed an appropriation of $75,000 for said street lighting, the city of Tulsa was without authority to take and pay for street lighting after said appropriation was exhausted, and the plaintiff, Public Service Company of Oklahoma, was without right to demand payment therefor even though the city authorities had induced plaintiff to continue furnishing electricity for such street lighting upon representations that funds would be available to pay therefor."

The representations of the city authorities have nothing to do with the question. Where the Constitution is involved, our first duty is to faithfully apply it. If that application could take account of individual equities, then time would be short when little would remain of the Constitution. It is to be expected that for the good of the many a few must suffer.

Where it is sought to bind a municipality on its contract for future services of claimant, or for supplies to be furnished in the future, the money to be spent by said municipality under the contract must not be in excess of the appropriation for that purpose, for that year, or in excess of the part remaining in said fund at the time the contract is executed. If the contract does not prescribe a definite and certain total sum to become payable, but prescribes payment on a quantum basis, only that quantum of the services or supplies may be paid for as were performed or furnished up to the time that the fund became legally and validly exhausted, and not thereafter. See Anadarko Funeral Home v. Scarth et al., decided April 30, 1935, 173 Okla. 103, 46 P. (2d) 539, wherein this identical question was discussed. Also Mayer v. J. T. Jones & Sons,

113 Okla. 119, 239 P. 904. The contract providing for payment on a quantum basis, and the amount of said payment having not been made certain by performance prior to exhaustion of the fund, and the bills in question being in excess of the appropriation, payment therefor is precluded by section 26 of article 10 of the Constitution to the effect that:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year. * * *"

Plaintiff does not deny or criticize the foregoing rule, but urges that it does not apply to this case. Plaintiff contends that the constitutional limitation applies only to indebtedness incurred in the governmental functioning of the municipality, and not to indebtedness incurred in its proprietary or quasi-private functioning, and that the lighting of streets falls within the latter classification.

While in a general sense the functions of a municipal corporation are all of a public nature, it nevertheless acts in a dual capacity, the one governmental and the other proprietary, or "quasi private." In its governmental capacity a municipality acts mainly as an arm of the state for the convenient administration of the government in the incorporated territory, for the public good on behalf of the state rather than for itself. In its proprietary, private, or quasi-private capacity a municipality acts mainly for its own ends, purposes, and benefits separately from or in addition to the burdens and benefits imposed or conferred upon it by the state government. Such is the theory. But in practice the distinction sometimes becomes shadowy. Often, indeed, it is difficult to say that the municipality is acting in either capacity to the exclusion of the other. For the purposes of this appeal, however, we may assume, without deciding, that street lighting is a proprietary function.

Plaintiff urges that:

"In the exercise by a municipality of its so-called proprietary or quasi-private powers it is held to the same degree of liability for its contracts and undertakings as is a private corporation."

But we may say, as a matter of general law, that even private corporations are not ordinarily held liable on contracts which are

in direct violation of the Constitution, or statutes, or public policy,—the reason being, not that the defendant has a meritorious defense, but that the plaintiff's purported cause of action has no foundation, in that said contract is unenforceable at the instance of either party suing thereon.

Was it not intended to include the expenses of proprietary functions within the indebtedness limited by section 26 of article 10? Hardly ever has a constitutional mandate been couched in clearer, plainer, or more emphatic language than is contained in this section. There is nothing ambiguous about it:

"No county, city, * * * or other political corporation, or subdivision of the state, shall be allowed to become indebted, **in any manner, or for any purpose,** to an amount exceeding, in any year the income and revenue provided for such year. * * *"

It was to be expected that a large part of the expenses of such municipal corporations will be incurred in matters wholly proprietary, having little to do with the general public welfare of the state, and that the consequent indebtedness must be paid mainly by taxation. Had the people of this state, who must pay the taxes, intended by their adoption of the Constitution to leave the door wide open for municipal officials to burden them with millions of dollars of indebtedness (for there would be no limit) covering purely local and often unnecessary projects, without the consent of the people at an election called for that purpose, they surely would have expressed such intention in words other than those of absolute forbiddance to become indebted in excess of the income and revenue, "in any manner," or "for any purpose."

Of course, we do not determine what is governmental and what is proprietary by the test of necessity,—that is, that a necessary operation or project is governmental and that an unnecessary though useful one is proprietary. But at the same time it is true that virtually if not all of a municipality's luxuries or semi-luxuries, useful and beneficial but not necessary, are within the proprietary classification. Could it be that the intention was to limit the power of the city officials to tax the people for governmental functions, but that at the same time they could bankrupt the citizens, if they chose, by forcing upon them a costly array of municipal luxuries? Such would be the case if we were to agree with the principle urged by plaintiff. We do not class street lighting as a luxury; we are speaking of what could be the legal result, in other cases, if we should announce plaintiff's theory as the law in this state.

Though the function may be proprietary, the method for paying for it is governmental. Section 26, article 10, relates to indebtedness which must be paid largely by taxation, and requires the municipality, for the good of its own citizens, to proceed on a pay-as-you-go basis, not only for its necessary governmental expenses but as to its other expenses as well. Subdivision (b) of section 12677, O. S. 1931 (9698, C. O. S. 1921), is in the chapter relating to revenue and taxation, and specifically includes "light" within the items for which an appropriation must be made.

It is unnecessary to discuss such cases as City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okla. 201, 248 P. 336, cited by plaintiff as authority for the statement that the debt limit provisions of section 26, article 10, do not apply to an incorporated city in the operation of a public utility owned exclusively by such city, further than to observe that in the instant case we are not dealing with a "public utility owned exclusively by such city." Here the city was merely buying the current and services of the plaintiff, exactly as it would buy other commodities, and, in so doing, was not engaged in a private business, or a business at all.

Plaintiff also quotes from many cases involving tort. Those cases are not in point, for the reason that constitutional limitations do not apply to involuntary indebtedness. Hume v. Wyand, 68 Okla. 261, 173 P. 813. Neither do we consider the remaining assignment of plaintiff, based upon the contention that there was an unexpended surplus in the water fund, which was erroneously omitted when considering the estimate; there are not sufficient facts in the record to sustain this allegation, and the defendant denies it. Furthermore, as to its legal significance, if any, it is not supported by argument or citation of authorities in point.

For the foregoing reasons, we conclude that the trial court was correct in its conclusions. The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur.