## HERD EQUIPMENT CO. v. EAGLE TOWNSHIP.

No. 26429.    May 25, 1937.

Springer & Hervey, for plaintiff in error.

Thomas A. Higgins, for defendant in error.

PER CURIAM. This is an appeal from a judgment in favor of defendant in error in an action commenced by plaintiff in error on a warrant issued by the treasurer of Eagle township, a municipal corporation, being a subdivision of Payne county, Okla., to Herd Equipment Company, an Oklahoma corporation, or order, for $786.08, purporting to be in payment for two orders for culverts and certain other road material, and payable out of the fund provided for said township for the fiscal year ending June 30, 1930; said warrant was registered October 14, 1929, and endorsed "Funds are not available to pay same."

The parties appear herein the same as in the lower court and will be referred to as they appeared in that court.

The petition is in the usual form, but there is no allegation that the warrant was issued against and was within an appropriation made for the purchase mentioned in the warrant for the fiscal year ending June, 1930.

The answer admitted the issuance of the warrant, but alleged that it was illegal and void for the reason that it was issued during the fiscal year ending June 30, 1930, for a purchase made during the previous fiscal year. The answer also contained a cross-petition which alleged that the warrant, being wholly illegal and void, should be canceled and surrendered to the treasurer of the township.

A reply was filed by plaintiff to the answer and cross-petition of defendant in the nature of a general denial, but admitted that the materials, for which the warrant was issued, were ordered during the fiscal year 1928-29, and alleged that such materials were not delivered until the fiscal year 1929-30. It was further alleged that it was necessary to fabricate the materials ordered, and it was understood between plaintiff and defendant that no delivery was to be made until the fiscal year 1929-30, and that the sale was not completed until delivery of the materials was made.

On the above issues this cause went to trial, and a jury was impaneled. After the opening statement by plaintiff, defendant replied it was its contention that the debt was contracted in one fiscal year and the warrant was issued on the fund for the following fiscal year, which rendered it contrary to law. To this plaintiff stated:

"In answer to that, the evidence on behalf of plaintiff will show that the order was taken in June and the goods were not delivered until July, the next fiscal year, and that the sale was completed on the delivery of the goods."

Defendant then moved for judgment on the pleadings and the statement of counsel for plaintiff, which was overruled.

Mr. R. R. Herd, manager of sales for plaintiff, was the principal witness for both sides. After he had testified for plaintiff, defendant made him its witness for the purpose of identifying and introducing in the record the orders involved.

These reflect that on June 5, 1929, road materials were ordered in the amount of $380, and on June 10, 1929, materials were ordered, which, together with the trucking charges, amounted to $359.08. Both of these orders were verified before a notary public and were filed as claims against the township; the first was verified on June 11, 1929, and the second on June 17, 1929; it does not appear when they were filed, but the warrant in question was issued on these claims.

There accompanied the orders a contract between the parties in which, among other things, it was provided that the orders would not be affected by any verbal agreement and not be subject to countermand; this contract was fully executed by the parties.

On the first order (defendant's Exhibit "1"), under the heading "Terms," the following appears: "Net first meeting of Board after July 1, 1929," and on the second order (defendant's Exhibit "2"), under the same heading "Net."

It is agreed that there were no funds for the fiscal year 1928-29 to pay for the material when ordered.

The evidence is in sharp conflict as to when delivery of the materials was made, but under our view this is immaterial.

At the conclusion of the trial both parties moved for an instructed verdict. The trial court sustained the motion by defendant and the following instructed verdict was rendered:

"We, the jury, duly impaneled and sworn to well and truly try the issues in the above-entitled cause, do upon our oath find the issues in favor of the defendant."

Journal entry of judgment was thereafter properly entered, and a motion for a new trial was filed, which was overruled, and appeal was perfected to this court.

The sole question at issue is whether the orders which were made and contracted before the end of the fiscal year 1928-29 created a valid indebtedness of the township, or whether the debt arose after the delivery of goods, if so delivered, during the fiscal year 1929-30.

Counsel for plaintiff in their brief quite candidly admit that, under section 26, article 10, of the Constitution, if the debt was created in one fiscal year to be paid in another fiscal year, there is no error in the judgment.

It is contended by plaintiff that the contract in question was only executory and that the indebtedness did not arise until executed by the delivery of the goods which were ordered, and numerous authorities are cited defining executed and executory contracts and the obligations which they create, none of which we deem applicable or controlling in this cause.

This question in one form or another has been before this court many times and cannot be considered any longer an open question in this jurisdiction.

Section 26, article 10, of the Constitution provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness. * * *"

The above language is as broad as it could have possibly been made. This court has always been zealous in the strict application of the limitations therein provided in order that its plain purpose and intent might be carried out.

The Legislature has been equally clear, concise, and diligent in vitalizing these constitutional limitations, through its statutory enactment, as may be seen from section

8638, C. O. S. 1921 (sec. 5955, O. S. 1931), which was in effect at the time these contracts were made, and is applicable to this cause. The section is as follows:

"It shall be unlawful for the board of county commissioners, the city council or the commissioners of any city, the trustees of any town, board of education, township board, school district board or any member or members of the aforesaid commissioners, or of any of the above named boards, to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue. Any such indebtedness, contracts incurred, acknowledged, approved, allowed or authorized in excess of the estimate made and approved for such purpose for such current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue, shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed or authorized or attested the evidence of said indebtedness. * * *" (Emphasis ours.)

That the contract, either executed or executory, was made in one fiscal year (1928-29) for the materials in question, and that it was the intent for such materials to be paid for during the following fiscal year, is admitted, which fact alone renders the warrant void and illegal.

In Boardman Co. v. Board of County Com'rs of Ellis County, 136 Okla. 85, 276 P. 474, almost this identical question was considered at great length, and it was held that, irrespective of the exigencies of the situation and what emergencies might exist, a contract for the building of bridges made during one fiscal year to be paid from the revenues of a succeeding fiscal year was invalid and created no obligation on the municipality.

In Dougherty-Nichols Construction Co. v. Town of Jenks, 115 Okla. 104, 242 P. 167, the syllabus is as follows:

"Whoever deals with a municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law, and those who contract with it, or furnish it supplies, do so with reference to the law; and, if they go beyond the limitations imposed, they do so at their peril.

"One who demands payment of a claim against a city must show some statute authorizing it, or that it arose from some

contract, express or implied, which finds authority of law, and it is not sufficient that the services performed for which payment is claimed were beneficial."

This syllabus was quoted in the body of the opinion with approval in Union Graded School District No. 5, Creek County, v. Ford, 169 Okla. 410, 37 P. (2d) 258.

That section 26, article 10, of the Constitution applies with equal force to executory as well as executed contracts is a settled question in this jurisdiction. In the recent decision in cause No. 25620, News Dispatch Printing & Auditing Co. v. Board of Com'rs of Adair, 177 Okla. 162, 57 P. (2d) 1156, it was said:

"Under section 26, art. 10, of the state Constitution, it is provided that any indebtedness incurred by the county in excess of the appropriations for the fiscal year is void. The intention and plain purpose of this section is to require municipalities to carry on their corporate operations upon the cash plan. The revenues of each year must take care of the expenditures of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue in hand, or legally levied, is void, unless it be authorized by a vote of the people, and within the limitations therein provided." (Emphasis ours.)

To the same effect is Board of County Com'rs of Okmulgee County v. Alexander, 171 Okla. 288, 42 P. (2d) 884.

We deem it unnecessary to quote from further authority on this subject, but what we have said is well sustained by the jurisprudence of this state, as will appear from the following: O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 P. 19; Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 P. 48; In re Bliss et al., 142 Okla. 1, 285 P. 73; Union School District No. 1 v. Foster Lumber Co., 142 Okla. 260, 286 P. 774; Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345; School District No. 10 of Woodward County v. Drake, 167 Okla. 510, 30 P. (2d) 903; Board of Com'rs of Tulsa County v. Morningside Hospital and Training School for Nurses, 175 Okla. 242, 51 P. (2d) 928; Central National Bank of Okmulgee v. Board of Com'rs of Cherokee County, 173 Okla. 606, 49 P. (2d) 195, and numerous other authorities cited in these cases.

Plaintiff urges that the existence of a dire emergency in this case justified the action of the township board in the purchase it made. We find that emergencies for purchases of this kind have been pleaded many times without avail to justify such contracts, but under the law of this state there can be no emergency that would render this contract valid. True, there are some exceptions to the general rule, which have been carefully examined, both in the decisions and the statutes, but this case does not fall within any of them.

In Anadarko Funeral Home v. Scarth, 173 Okla. 103, 46 P. (2d) 539, plaintiff, a funeral establishment, found itself, for a similar reason, without a legal remedy to collect the indebtedness alleged to be owed to it by the board of county commissioners of Caddo county, and in regard to this matter it was said:

"This is an unfortunate result for the plaintiffs, but their inconvenience must yield to the larger and more important necessity of enforcing the safeguards enacted by the people into the Constitution for the proper handling of their own public funds."

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys T. W. Arrington, Summers Hardy, and A. B. Honnold in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Arrington, and approved by Mr. Hardy and Mr. Honnold, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, C. J., and WELCH, PHELPS, CORN, and HURST, JJ., concur.