2000 OK 74

**WYATT–DOYLE & BUTLER ENGINEERS, INC.,** Appellant,

v.

**The CITY OF EUFAULA,** Appellee

No. 91,325.

Supreme Court of Oklahoma.

Oct. 3, 2000.

Jack S. Dawson, James A Scimeca, Robert P. Skeith, Miller Dollarhide, Oklahoma City, Oklahoma, for Appellant.

David A. Davis, Oklahoma City, Oklahoma, for Appellee.

Diane Pedicord, Sue Ann Nicely, Oklahoma Municipal League, Oklahoma City, Oklahoma, Amicus Curiae.

WINCHESTER, J.:

¶ 1 Two issues are presented to this Court. The first issue is whether the Uniform Arbitration Act, 15 O.S.1991, §§ 801–818, forbids this Court from reviewing the contract submitted to the arbitrator where one party asserts that the contract before us is void because it is in violation of Article 10, § 26 of the Oklahoma Constitution. If this contract may be reviewed, the second issue is whether it violates this state's constitution. We hold that under these facts, the Uniform Arbitration Act does not prohibit review of the issue by this Court, and that the contract before us violates the constitution of this state.

¶ 2 According to the contract between the parties, which is a part of the record before this Court, the City of Eufaula, appellee, and the Eufaula Industrial Authority contracted for engineering services with Wyatt–Doyle & Butler Engineers, Inc., appellant, on January 10, 1994, for the development of Mega Stars Amphitheater and Amusement Park, an entertainment facility to be located in Eufaula. Wyatt–Doyle was to be paid under the contract by the Authority, and the City's liability was contingent on the Authority's failure to pay. The Authority paid to a certain point and subsequently filed bankruptcy. The City also failed to pay.

¶ 3 The contract between the parties contained a dispute resolution clause providing for arbitration of disputes arising under the contract. Pursuant to the clause, Wyatt–Doyle initiated an arbitration proceeding. The arbitrator determined that the City of Eufaula owed Wyatt–Doyle $184,641.42, plus interest. When the City of Eufaula failed to pay, Wyatt–Doyle commenced an action in the District Court of Oklahoma County to have the award confirmed and enter a judgment pursuant to 15 O.S.1991, § 811. The City of Eufaula argued that the district court lacked jurisdiction to enter judgment because the decision of the arbitrator violated Article 10, § 26 of the Oklahoma Constitution, and therefore the contract between the City of Eufaula and Wyatt–Doyle was void. The district court refused to confirm the award, and the Court of Civil Appeals affirmed its decision. We have previously granted certiorari.

## I. DOES THE UNIFORM ARBITRATION ACT PROHIBIT REVIEW OF WHETHER THE CONTRACT IS IN VIOLATION OF ARTICLE 10, § 26?

¶ 4 Wyatt–Doyle argues that the City of Eufaula failed to show any statutory ground for vacation of the arbitrator's award and therefore the trial court erred in refusing to confirm the award.[1] The City of

1. Title 15 O.S.1991, §§ 812, 813 provide:

" § 812. Vacation of Award—Grounds.
"A. Upon application of a party, the court shall vacate an award if:
"1. The award was procured by corruption, fraud or other illegal means;
"2. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
"3. The arbitrators exceeded their powers;
"4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the requirements of this act, as to prejudice substantially the rights of a party; or
"5. There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 3 of this act and the party did not participate in the arbitration hearing without raising the objection.
"B. The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
"C. An application under this section shall be made within ninety (90) days after delivery of a

Eufaula answers that the existence of an arbitration clause in a contract should not determine whether the contract can exceed the constitutional debt limitation, and that to hold otherwise would allow a city to enter into a contract that it had no ability to pay, then submit the case to arbitration and force payment on its taxpayers without an election.

¶5 Article 10, § 26 of our Oklahoma Constitution provides in pertinent part:

"Except as herein otherwise provided, *no* county, *city,* town, township, school district, or other political corporation, or subdivision of the state, *shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year the income and revenue provided for such year* without the assent of three-fifths of the voters. . . . " [Emphasis added.]

█ ¶6 This constitutional provision forces cities and municipalities to operate on a cash basis, and prevents indebtedness payable out of tax revenues from extending beyond one year. *Del City v. FOP, Lodge No. 114,* 1993 OK 169, ¶5, 869 P.2d 309. It serves not only as a restriction on the city but also on the legislature; the legislature cannot relieve a municipality of the burden of following the mandate of § 26. *Protest of Carter Oil Co.,* 148 Okla. 1, 2, 296 P. 485, 488 (1931); *Perrine v. Bonaparte,* 140 Okla. 165, 282 P. 332, 333 (1929); *St. Louis-San Francisco Ry. Co. v. Andrews,* 137 Okla. 222, 278 P. 617 (1929).

¶7 This Court has taken care to preserve this right of the people from early in our state's history. *In re Town of Afton,* 43 Okla. 720, 144 P. 184 (1914). In the *Afton* case, the legislature had enacted a statute that authorized the district court to validate indebtedness of a municipality that was invalid under the Constitution. The Court held that the legislature did not have the power to authorize the court to give life and validity to something that never had any legal existence. *Afton,* 144 P. at 186. The Court observed, "[I]t is the policy of our government and the spirit of the Constitution that debts shall not be contracted or in any way recognized as legal, when created in excess of the limitations of the Constitution." *Afton,* 144 P. at 187. The Court additionally observed that when the question of enforcing a plain provision of the organic law is

copy of the award to the applicant. If predicated upon corruption, fraud or other illegal means, the application shall be made within ninety (90) days after such grounds are known or should have been known.
"D. When vacating the award on grounds other than stated in paragraph 5 of subsection A of this section, the court may order a rehearing before new arbitrators are chosen as provided in the agreement. In the absence of such provision, new arbitrators shall be chosen by the court in accordance with Section 4 of this act. If the award is vacated on grounds set forth in paragraphs 3 and 4 of subsection A of this section, the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with Section 4 of this act. The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order.
"E. If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.
" § 813. Modification or Correction of Award by Court—Grounds.
"A. Upon application made within ninety (90) days after delivery of a copy of the award to the applicant, the court shall modify or correct the award when:
"1. There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
"2. The award is imperfect in a matter of form, not affecting the merits of the controversy; or
"3. The arbitrators have made an award upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted.
"B. If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as modified and corrected. Absent any modification or correction, the court shall confirm the award as made.
"C. An application to modify or correct an award may be joined in the alternative with an application to vacate the award.
"D. Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements, may be awarded by the court."

weighed against the hardship falling on the parties who hold warrants for value and who relied upon the integrity of the people to pay this debt of honor, the Court must follow the plain provision of the Constitution. *Afton,* 144 P. at 187–188. If the contract between the City of Eufaula and Wyatt–Doyle violated Article 10, § 26 of our Constitution, then Wyatt–Doyle's reliance on an act of the legislature prohibiting review of the constitutional issue nevertheless will not validate the debt, and cannot prohibit our review. Stated another way, if the City of Eufaula has entered into an agreement that obligates the City of Eufaula to a debt that cannot be paid within a year as § 26 requires, then the fact that an arbitrator reviewed the contract with the consent of the parties still does not prevent this Court from reviewing the contract's validity.

¶ 8 "This Court is the Protector of our Constitution." *In re Initiative Petition No. 344,* 1990 OK 75, ¶ 16, 797 P.2d 326, 330. No statute can remove this duty and place the ultimate determination of a constitutional issue in an arbitrator. We have recognized that constitutional rights, even fundamental rights, may be waived. *Seymour v. Swart,* 1985 OK 9, ¶ 5, 695 P.2d 509, 511. Parties may waive their constitutional rights and have their dispute settled by an arbitrator. But Wyatt–Doyle cannot successfully argue that the City of Eufaula waived its constitutional right because Article 10, § 26 was not enacted as a protection for municipalities, but as a protection of the people from the excesses of governmental entities, which includes municipalities. The right does not belong to the City of Eufaula. It is not for the protection of the City of Eufaula, but it is a right meant to protect the taxpayers of Eufaula. The City of Eufaula cannot waive a constitutional right belonging exclusively to the people by submitting the question to an arbitrator.

## II.  IS THE CONTRACT IN VIOLATION OF ARTICLE 10, § 26?

¶ 9 Having decided that this Court may review whether Article 10, §· 26 was violated, we now examine the issue of whether the agreement constituted a debt that violates the mandate of Article 10, § 26. Wyatt–Doyle argues that its agreement with the City of Eufaula did not constitute a debt contemplated by Article 10, § 26 because the obligation created by the contract was contingent on the default of the Eufaula Industrial Authority. Wyatt–Doyle cites *City of Tulsa v. Langley,* 1946 OK 123, ¶ 52, 168 P.2d 116, 123, and *Board of County Com'rs of Tulsa County v. Mullins,* 1950 OK 95, ¶ 28, 217 P.2d 835, 842, to support its argument that a debt for purposes of the applicability of Article 10, § 26, does not arise under an agreement unless the agreement states a sum certain to be paid within a specified period of time.

¶ 10 In the *Mullins* case, the Tulsa County Fair Board leased the pavilion building on the Tulsa County Fair Grounds to Mullins and Mitchell for five years. The lease included an agreement to keep the pavilion building in good repair. The Board of County Commissioners of Tulsa County sued to cancel the lease. One of the Commissioners' arguments was that the lease violated Article 10, § 26 because the lease obligated the county for the expenditure of funds and revenue beyond the fiscal year in which the contract was made. This Court answered the issue by holding that the lease contracted to do only what the law clearly required the Board of Directors of the Exposition and Fair to do, that is, to keep the buildings in a fair state of repair. The Court cited 1943 Okla.Sess.Laws, ch. 2, § 10, that the fees and charges collected shall be used, among other things, for operating and conducting the Exposition and Fair and for maintenance and repair of the buildings. *Mullins,* 1950 OK 95, ¶ 24, 202 Okla. 628, 217 P.2d at 841–842. Section 12 of the act provided that the Board of County Commissioners must include an amount in its estimate of the needs of the county for each fiscal year sufficient to pay for the expenses involved in conducting the Exposition and Fair, including the maintenance of buildings and upkeep of the grounds. The Court cited as a rule that this was an obligation imposed by law, to which Article 10, § 26, did not apply. After stating the rule the Court added that besides this complete answer, the lease did not create a

debt. The Court reasoned that the Fair Board did not become impermissibly indebted until some material or services necessary in repairing the building were needed that were in excess of the revenue provided for the year in which the repairs were made. *Mullins,* 1950 OK 95, ¶ 29, 202 Okla. 628, 217 P.2d at 842. But regardless of the rationale used in *Mullins,* the facts reveal that the Fair Board was contracting for what it was already required by statute to do, and for which funds were provided yearly to pay for the expenses. Accordingly, there was no violation of Article 10, § 26.

¶ 11 In *Langley,* a lawyer tried to recover a money judgment for services provided to the City of Tulsa over a period of several years. The Water Commission of Tulsa employed Langley and his partner in May 1922, to acquire water rights on Spavinaw Creek, and property for use in connection with the water supply system. The law partners were to be paid in accord with the value of the services. The Water Commission made no further contract with the partners. The legal services lasted until 1938, at which time the rights sought by the Water Commission were acquired by judgment, and the judgment became final when no appeal was taken. Although partial payments over the years were made to the law partners, the balance due them for their services was $14,-100. When Langley, the surviving partner, presented a claim to the City of Tulsa it was disapproved, and Langley sued. The position of the City of Tulsa was that it could not legally pay for the services. The funds from the sale of bonds used to finance the project, and the fund from the water department had been transferred to the City of Tulsa and later exhausted. After June 30, 1931, funds available for expenditure in connection with the water department were appropriated as a part of the general fund budget of the city. No appropriations were made from succeeding fiscal years to pay the law partners under the May 1922 contract. This Court held that the debt could not be approved. *Langley,* 1946 OK 123, ¶ 49, 196 Okla. 680, 168 P.2d at 123. The Court commented that there may be contingency situations where a municipality does not become indebted until the delivery of material or the performance of a ser-

vice. *Langley,* 1946 OK 123, ¶ 52, 196 Okla. 680, 168 P.2d at 123. Although that is the comment cited by Wyatt–Doyle to support its position, that is not the basis of the Court's holding. *Langley* cites the applicable rule that "from the viewpoint of compliance with the Constitution (assuming that the expenditure contemplated in the contract is within the appropriation), the question is whether the contract obligation becomes a 'debt' before the funds are exhausted." *Anadarko Funeral Home v. Scarth,* 173 Okla. 103, 46 P.2d 539 (1935). "[O]ur constitutional provisions on limitation of indebtedness also prohibit the pledge of revenues and income which have not yet been provided for or collected." *Langley,* 1946 OK 123, ¶ 57, 196 Okla. 680, 168 P.2d at 124. Neither *Mullins* nor *Langley* support the position for which Wyatt–Doyle cites them.

¶ 12 The legal position of Wyatt–Doyle is more nearly like that of the plaintiffs in the *Anadarko Funeral Home* case, cited above. The plaintiffs, who were undertakers, contracted with the Board of County Commissioners of Caddo county to embalm, clothe, furnish graves, conduct funerals, and completely furnish and supervise the burials of people who became a charge upon the county during the fiscal year. For this service, the plaintiffs were to receive a certain amount for each person buried. The county budget included $5,952.79, for caring for the poor and burial of paupers. But by the time the plaintiffs buried the first person, the fund had been exhausted. Thirty-five people were buried pursuant to the contract when the plaintiffs filed their claim for $1,545 with the county commissioners, who disallowed it because the fund had been exhausted. The trial court granted judgment to the defendants on the ground that the contract violated Article 10, § 26. This Court affirmed. The Court stated that the contract did not specify a definite amount to become due, nor was there performance by the plaintiffs before the fund was exhausted, which would have fixed the portion of the fund the plaintiffs could claim. The obligation created by the contract could not be called a debt for a sum certain until burials took place, because the county was not required to pay until the

plaintiffs performed. *Anadarko Funeral Home,* 46 P.2d at 541. The Court held that an obligation to pay a definite and certain amount must become fixed before the funds appropriated for the obligation become exhausted. The amount must be certain so that it may be subtracted from the fund on hand, leaving a definite balance for the meeting of other obligations. There must be an existing appropriation for the purpose of the contract at the time the contract was made. *Anadarko Funeral Home,* 46 P.2d at 542. The *Anadarko Funeral Home* case reveals that even though an obligation is based on some contingent event, which is the argument of Wyatt–Doyle concerning the case at bar, the resulting debt would still violate Article 10, § 26 if no amount were appropriated to pay for the subsequent debt. And the teaching of the *Afton* case, discussed in section I of this opinion, reveals that a contractual obligation made in one fiscal year cannot be subsequently validated in a succeeding fiscal year by the voters, and if it cannot be subsequently validated by the voters, it certainly could not be subsequently validated by a municipality. Wyatt–Doyle is incorrect in assuming that labeling its agreement with the City of Eufaula a contingent obligation and not a debt would save the agreement from violating Article 10, § 26.

¶ 13 In *Del City v. FOP, Lodge No. 114,* 1993 OK 169, 869 P.2d 309, this Court analyzed and discussed cases construing Article 10, § 26. The Court concluded that the cases fall into two categories: (1) cases where the obligation is imposed by the Federal or Oklahoma Constitution, and (2) cases where the obligation is imposed by either the legislature or by a voluntary contract entered into between the parties. Obligations falling under the first category are not controlled by Article 10, § 26, but those falling into the second category are. *Del City,* 1993 OK 169, ¶ 24, 869 P.2d at 315. *Del City* observed that there were two cases that did not fall clearly within either of the two categories, one of those cases listed is *Mullins.* Concerning these cases the Court held that a county must fund all of its obligations, except those of a constitutional governmental nature, by conforming to the constitutional requirements of Article 10, § 26. While declining to disturb *Mullins,* the Court nevertheless emphasized that, "A legislative act cannot trump a constitutional provision and create a municipal liability that necessarily requires unconstitutional funding practices." *Del City,* 1993 OK 169, ¶ 36, 869 P.2d at 318.

¶ 14 Wyatt–Doyle's Reply Brief to the trial court in the original record, when pressing the "contingent liability" argument, admitted that "No specific appropriation was possible or required due to the nature of the City's liability." Affidavits by the City reveal that no appropriation was made to cover any debt resulting from the contract between the parties. As quoted above, "[O]ur constitutional provisions on limitation of indebtedness also prohibit the pledge of revenues and income which have not yet been provided for or collected." *Langley,* 1946 OK 123, ¶ 57, 196 Okla. 680, 168 P.2d at 124. The teaching of the cases cited above is that a municipality cannot create an obligation one year that results in a debt in a succeeding year without violating Article 10, § 26.

¶ 15 Parties who contract with municipalities must inform themselves of the limitations imposed by the constitution of this state. "This is an unfortunate result for the plaintiffs, but their inconvenience must yield to the larger and more important necessity of enforcing the safeguards enacted by the people into the Constitution for the proper handling of their own public funds." *Anadarko Funeral Home,* 46 P.2d at 543.

¶ 16 The debt created by the contract between Wyatt–Doyle and the City of Eufaula violates Article 10, § 26. Accordingly, the trial court correctly decided to refuse to confirm the award of the arbitrator.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.

¶ 17 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, WATT, and BOUDREAU, JJ.—concur.

¶ 18 KAUGER, J.—concurs in result.