Dear Senator Taylor,
¶ 0 This office has received your request for an officialAttorney General Opinion in which you ask the followingquestions:
 1. May an Oklahoma State agency enter into a contract limitingthe liability of a private vendor providing goods or services forthe State of Oklahoma?
 2. If the answer is yes, may such a limitation of liability benegotiated by a State agency with a successful vendor, assumingprovision for the negotiation was included in the solicitation bythe State agency?
¶ 1 Your questions involve the Oklahoma Central Purchasing Act (the "Act"), 74 O.S. 85.1 — 74 O.S. 85.44C (1991-2000), which requires State agencies (through the Purchasing Division ofthe Department of Central Services) to solicit bids from vendors when contracting for goods or services. Your letter says that "major vendors with great potential exposure may be reluctant to bid or propose on solicitations for projects in Oklahoma if faced with unlimited liability." Letter from Stratton Taylor, President Pro Tempore, Oklahoma State Senate, to W.A. Drew Edmondson, Attorney General (Dec. 7, 2000) (on file with the Attorney General Office of Oklahoma). Some vendors have proposed that their liability in any contract be limited to a specific amount, such as the amount of the contract. You first ask whether a State agency may so limit a vendor's liability in a procurement contract; you then ask whether negotiating such a limitation may take place after the contract is awarded to a particular vendor, provided that the bid solicitation allowed for such negotiation.
 I. LIMITATION OF LIABILITY CLAUSES
¶ 2 As your letter states, this office considered a similar question in Attorney General Opinion 78-256. That Opinion considered the legality of several proposed procurement contract clauses, two of which relate to your question: "clauses whereby the state agrees to hold a private entity or individual harmless for his actions"; and "clauses whereby the state agrees to waive the legal rights or defenses in advance." Id. at 595. Opinion 78-256 concluded that both clauses were "inconsistent with the laws of the State of Oklahoma and thus void." Id. at 599, 600. That Opinion focused on such clauses in the context of the Attorney General's statutory authority to control litigation in which the state is a party. In this Opinion, we address the issue of such clauses' validity under general contract law and provisions of the Oklahoma Constitution.
¶ 3 The type of limitation of liability provision you propose is one which would, like the clauses in Opinion 78-256, hold a private entity (a vendor) harmless for his actions and limit the State's legal rights by capping the amount the State could receive as damages due to a vendor's negligence to the amount specified in the contract. For purposes of this Opinion, we will refer to such a limitation of liability provision as an "exculpatory" clause.
¶ 4 There are two types of exculpatory clauses: those that grant a party complete immunity from liability and those that only partially limit liability. "Courts have made a distinction between clauses that seek to exempt a contracting party from his own negligence and those that seek to limit the liability ofthe contracting party." Elsken v. Network Multi-Family Sec. Corp.,838 P.2d 1007, 1008 (Okla. 1992) (emphasis added).
¶ 5 Contracts which completely shelter a party from the consequences of its negligence are disfavored in cases of ordinary negligence; moreover, in cases of gross or wanton negligence, or where a clause exempts a party from liability for intentional or fraudulent acts, Oklahoma law holds such clauses invalid and unenforceable. See 15 O.S. 212 (1991); Schmidt v. United States, 912 P.2d 871, 874 (Okla. 1996). The type of exculpatory clause you propose would limit, rather than completely exempt, a vendor's liability for negligence.
¶ 6 When determining the validity of a limited exculpatory clause, Oklahoma courts apply the test found in Schmidt. Schmidt requires: (I) that the clause's language clearly and unambiguously state the parties' intent to limit liability; (2) that the parties have equal bargaining power; and (3) that enforcement of the clause would not violate public policy. Seeid. at 874. An exculpatory clause violates public policy when it would "(a) be injurious to public health, public morals or confidence in administration of the law or (b) so undermine . . . individual rights . . . to personal safety or private property."Id.
¶ 7 From the above cases and statutes we see that exculpatory clauses which limit (but not exempt) liability and satisfy the elements of the Schmidt test may be valid and enforceable under Oklahoma law, at least in contracts between private parties. Additional considerations apply, however, when the State is one of the contracting parties. We must now determine whether other provisions of law prohibit the State from limiting a vendor's liability with an otherwise valid exculpatory clause in a procurement contract.
 II. THE CONSTITUTIONAL ISSUE
¶ 8 If a vendor's liability were limited to the amount of the contract and the vendor's negligence or other action resulted in damages exceeding that amount, the State would have to absorb the cost of those damages. This possibility raises a constitutional issue — whether an exculpatory clause which potentially benefits a vendor at the State's expense would essentially constitute an "obligation" under Article X, Section 23 of the Oklahoma Constitution.
¶ 9 Article X, Section 23 states in pertinent part:
 "The state shall never create or authorize the creation of any debt or obligation . . . against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as may be provided in this section and in Article X, Section 24 and Article X, Section 25 of Article X of the Constitution of the State of Oklahoma.
 "Any department, institution or agency of the state operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency shall not incur obligations in excess of the unencumbered balance of cash on hand."
Id. 23, 23(5) (emphasis added).
¶ 10 In the situation you raise, a vendor exculpatory clause requires the State, in effect, to pay the difference between the limited amount it could recoup from a vendor in a negligence action and the actual total damages. While the contract would not require the State to pay anything directly to the vendor if the vendor's negligence resulted in damages exceeding the amount specified in the contract, the State would have to pay other sources, or otherwise itself absorb, the amount required to correct the results of the vendor's negligence. Vendor negligence may or may not occur in any given contract, and result in damages; the State's potential costs are therefore a contingent liability.
¶ 11 The Oklahoma Supreme Court addressed the issue of whether contingent liabilities are obligations under the Constitution inWyatt-Doyle Butler Engineers, Inc. v. City of Eufaula,13 P.3d 474 (Okla. 2000). In Wyatt-Doyle, the City of Eufaula and the Eufaula Industrial Authority contracted for engineering services with Wyatt-Doyle. Under the contract the Authority was to pay Wyatt-Doyle for the services; the City's liability was contingent on the Authority's failure to pay.
¶ 12 The Authority paid to a certain point and subsequently filed for bankruptcy. The City also failed to pay, saying the contract created a debt of the City which violated Article X, Section 26 (which parallels Section Article X, Section 23 but applies to municipalities) of the Oklahoma Constitution. Wyatt-Doyle argued that a contingent obligation was not a debt for purposes of Section 26 because the obligation did not arise unless the contract stated a sum certain to be paid within a specified period of time. See id. at 477.
¶ 13 The Court disagreed, saying that even though an obligation is based on some contingent event, the contract results in an unconstitutional debt unless an appropriation exists for that purpose to pay it. See id. at 479 (citing Anadarko FuneralHome v. Scarth, 46 P.2d 539, 542 (Okla. 1935)). It did not matter that, as Wyatt-Doyle argued, "No specific appropriation was possible or required due to the nature of the City's liability." Id. Since no appropriation had been made to cover any debt resulting from the contract between the parties, the obligation violated Article 10, Section 26.
¶ 14 As noted above, Article X, Section 26 applies to cities and other subdivisions of the State, while Article X, Section 23 is the companion provision which applies to State agencies. Therefore, the Court's reasoning in Wyatt-Doyle also applies to contingent obligations arising against the State under Article X, Section 23.
¶ 15 Although the facts in Wyatt-Doyle differ slightly from the situation you raise, the Court's reasoning regarding contingent obligations applies. In Wyatt-Doyle, although the time of payment was indeterminate (because the City could not know when or if the Authority would default), the City was liable to pay the vendor a definite amount (that which was unpaid at the time the Authority defaulted). Since no money had been appropriated to cover such an expenditure, the contract violated Article X, Section 26. ¶ 16 In the situation you raise, the contingency is more remote because the obligation is an implicit result of the exculpatory clause rather than a term expressly bargained for. Nevertheless, the effect is the same as in Wyatt-Doyle — the State ends up with a contingent obligation for which no appropriation has been made.
¶ 17 When a contract contains a vendor exculpatory clause and the vendor acts negligently resulting in damages the State must pay (although not to the vendor, as in Wyatt-Doyle) or absorb the amount of damages exceeding the contract limitation. Such a contract would therefore create a contingent obligation. A contingent obligation would violate Article X, Section 23 of the Oklahoma Constitution unless appropriations were made sufficient to pay the potential obligation for each fiscal year throughout the life of the contract. This would ensure that enough unencumbered cash was on hand to pay the obligation should it arise. The initial appropriation would have to exist at the time the contract was made. See Wyatt-Doyle, 13 P.3d at 479.[1]
Only in this way could an agency prevent an obligation from arising "in excess of the unencumbered balance of cash on hand," the situation prohibited by Article 10, Section 23(5).
¶ 18 Making such appropriations is impracticable, however. It is impossible to predict what funds to appropriate for a contingent obligation because the amount payable, as well as the time of payment, are indeterminate. Therefore, a State agency may not enter into a procurement contract limiting the liability of a private vendor, because a contingent obligation would arise for which no appropriation had been made, violating Article X, Section 23 of the Oklahoma Constitution. This is the same result reached in Attomey General Opinion 78-256, which we affirm. We reached a similar conclusion in Attorney General Opinion 96-007,
finding that a State agency was prohibited by Article X, Section 23 from entering into an agreement indemnifying a federal agency because the proposed indemnity was "indefinite in term and uncertain in amount." Id. at 18.
 III. NEGOTIATION OF LIABILITY
¶ 19 Although the answer to your first question is no, we will address the issue raised in your second question. No negotiation is possible after the successful vendor is chosen. The Central Purchasing Act endeavors to place all competing vendors in an equal position prior to their submitting bids for State contracts. Vendors can compete equally only when all vendors bid using the same contract terms. "To allow agencies to subsequently negotiate and modify material clauses after other parties have been excluded through the competitive bidding process undermines the integrity of the competitive bidding system and makes such a system meaningless." Indiana Nat'l Bank v. State ex rel. Dep'tof Human Serv., 857 P.2d 53, 62 (Okla. 1993).
¶ 20 Adding a limitation of liability clause after a contract was awarded would change the material terms of the contract. Therefore, a limitation of liability clause cannot be negotiated by a State agency with a successful vendor after a contract has been awarded, even if the bid solicitation so provided.
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1.A vendor exculpatory provision creates an obligationprohibited by Article X, Section 23 of the Oklahoma Constitutionunless funds have been appropriated to cover the obligation atthe time the contract was made. See Wyatt-Doyle ButlerEngineers v. City of Eufaula, 13 P.3d 474 (Okla. 2000). Sinceit is impracticable to appropriate funds for an obligation thatis indeterminate as to both amount and date payable, a Statecontract with a private vendor may not contain an exculpatoryclause which limits the vendor's liability.
 2.A limitation on liability may not be negotiated by a Stateagency with a successful vendor after a contract has beenawarded, even if the bid solicitation contained such a provision.Allowing the successful vendor to negotiate a change to amaterial term of the contract as presented in the bidsolicitation would violate the Central Purchasing Act, 74 O.S.85.1 — 74 O.S. 85.44(C) (1991-2000). See Indiana Nat'l Bankv. State ex rel. Dep't of Human Serv., 857 P.2d 53, 62(Okla. 1993).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
[1] The decision in Wyatt-Doyle agrees with the principle of contingent debt explained in another case:
 "A debt, payable in the future, is obviously no less a debt than if payable presently; and a debt payable upon a contingency, as upon the happening of some event, . . . is some kind of a debt, and therefore within the constitutional prohibition. If a contract or undertaking contemplates, in any contingency, a liability to pay when the contingency occurs, the liability is absolute; the debt exists, and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred. . . . In such cases the debt is created when the contract is made."
State ex rel. Woods v. Cole, 63 P.2d 730, 736 (Okla. 1936) (Gibson, J., dissenting) (citations omitted).